## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

RAMON HERNANDEZ-PACHECO,                          CIVIL NO. 10-2088 (JRT/TNL)

        PETITIONER,

V.                                                **REPORT AND RECOMMENDATION**

SCOTT PETER FISHER,

        RESPONDENT.

---

Ramon Hernandez Pacheco, FCI Sandstone, POB 1000, Sandstone MN 55072, pro se Petitioner;

Mary J. Madigan, Assistant U.S. Attorney, and Gregory G. Booker, Assistant U.S. Attorney, 300 South 4th Street, Suite 600, Minneapolis MN 55415, for Respondent.

## I.  INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody. (Docket No. 1.) Petitioner Ramon Hernandez Pacheco (Petitioner) is an inmate confined at the Federal Correctional Institution in Sandstone, Minnesota.  (Decl. Kinyon ¶ 2, June 8, 2010.)  Petitioner is serving a 151-month sentence imposed by the United States District Court for the Western District of Missouri, following his conviction for Conspiracy to Distribute in Excess of 500 Grams of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 846. (*Id.*)  Petitioner has a projected release date of April 3, 2019, with good conduct time credit. (*Id.*)

Petitioner brings the present action following the loss of good-time credit as a result of a prison disciplinary action.[1]  Petitioner contends that this prison disciplinary action violated his due process rights under the United States Constitution.[2]  Respondent opposes the Petition, asserting that there is sufficient evidence to support the penalty of loss of good-time credit and Petitioner was afforded all of the due process rights to which he was entitled. Petitioner moved to strike portions of a declaration submitted in Respondent's answer to the Petition.

The action has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and D. Minn. LR 72.2(b).  For the reasons stated below, **IT IS HEREBY RECOMMENDED** that Petitioner's motion to strike be **DENIED**; the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (Docket No. 1) be **DENIED** for Petitioner's failure to exhaust his administrative remedies; and this action be **DISMISSED WITHOUT PREJUDICE** for Petitioner to exhaust his administrative remedies. In the alternative, it is recommended that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (Docket No. 1) be denied on the merits, and this action be dismissed with prejudice.

---

[1] Petitioner also lost telephone and commissary privileges as a result of the prison disciplinary action. The loss of these privileges is not reviewable under 28 U.S.C. § 2241 and thus, not reviewable under the present action. *See Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) ("The essence of habeas corpus is an attack by a person in custody upon the legality of that custody. If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy.")

[2] Petitioner also contends that his claim comes under the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.* The Administrative Procedure Act is inapplicable to claims concerning loss of good time credit. *See* 18 U.S.C. § 3625.

II.     **BACKGROUND**

    a.  **Prison Disciplinary Action**

Petitioner alleges in his Petition and attachments (Docket No. 1) as follows: On February 13, 2010, an Incident Report was created by K.F. McAllister, the Food Service Foreman. The Incident Report stated that McAllister observed Petitioner exit the bakery cooler with two racquetball containers filled with cracked eggs. According to McAllister, Petitioner was not assigned to work in the bakery. Based upon these events, the Incident Report charged Petitioner with two violations of Bureau of Prison (BOP) policies: "Stealing" and "Being in an Unauthorized Area."

Petitioner further alleges as follows: On February 13, 2010, at 7:25 p.m., Lt. W. Earl delivered the Incident Report to Petitioner. Lieutenant Earl advised Petitioner of his rights in English. Petitioner is not fluent in English; his native language is Spanish. On February 17, 2010, Petitioner was provided with the Incident Report and advised of his rights in Spanish by G. Villarreal, a prison employee.

Petitioner further alleges as follows: On February 24, 2010, the Unit Disciplinary Committee (UDC) conducted a hearing on the incident. Villarreal took part in the hearing as a member of the UDC. Petitioner wanted someone to assist him in presenting a statement to the UDC as part of the hearing. This request was denied, and Petitioner's statement to the UDC was mistranslated by Villarreal. In Petitioner's statement to the UDC, he denied stealing eggs and being in an unauthorized area, and he requested pictures of the eggs. He was told that there were no pictures and the eggs were thrown away. The UDC referred the charges to the Discipline Hearing Officer (DHO).

Petitioner further alleges as follows: On March 11, 2010, Petitioner appeared for a hearing before a DHO, located in Duluth, via video broadcast. Petitioner's hands and feet were

restrained during the hearing.  Petitioner's request that four witnesses be called was denied.  The

DHO found Petitioner guilty of both offenses and imposed a penalty of a loss of 41-days good-

time credit, 90-days telephone privileges, and commissary privileges.

### b.   Appeal of the Discipline Hearing Officer's Decision

Petitioner alleges that on March 22, 2010, March 29, 2010, and April 7, 2010, he

attempted to engage in the administrative remedy process.  Petitioner contends that his efforts

were frustrated in two ways.  First, staff refused to provide him with the necessary forms.

Second, his attempts to pursue his administrative remedies were "rejected."

Petitioner's attachments support portions of his contentions regarding his attempts to

appeal the DHO's decision through the administrative process. The attachments support the

following actions: On March 22, 2010, Petitioner submitted a Request for Administrative

Remedy, seeking a copy of the DHO's decision and disposition, and requesting that the Warden

review and audit the DHO's decision. On March 29, 2010, Petitioner submitted a Regional

Administrative Remedy Appeal, which stated that the institution had not given him a copy of the

DHO report and the Warden had not issued a direction extending the "time-frame." On April 8,

2010, the Administrative Remedy Coordinator sent Petitioner a notice of rejection of his regional

appeal. The notice stated that Petitioner's appeal was rejected because Petitioner did not provide

a copy of the DHO report with his submission. The Administrative Remedy Coordinator stated

in the notice that Petitioner could resubmit his appeal in proper form within 15 days of the date

of the rejection notice. On April 21, 2010, the Administrative Remedy Coordinator sent

Petitioner a second notice of rejection of his administrative appeal. The second notice stated that

Petitioner's appeal was rejected because he did not provide a copy of the DHO report and

Petitioner could resubmit his appeal in proper form within 15 days of the date of the rejection

notice and "[o]nce you receive your DHO report you may resubmit your appeal."

Thereafter, on May 19, 2010, Petitioner filed his Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody. (Docket No.1) On June 21, 2010, Respondent filed a Response to Petitioner's Petition. (Docket No. 5.) Respondent's motion papers include the DHO Report and the Declaration of Ann C. Kinyon, which both state that a copy of the DHO report was delivered to Petitioner on May 25, 2010 at 8:45 a.m.

On September 24, 2010, Petitioner filed a reply to Respondent's answer to the Petition. (Docket No. 10.) In his reply, Petitioner moved to strike certain paragraphs of the Declaration of Ann C. Kinyon.  In his reply, Petitioner also confirmed that he obtained the requisite forms for filing his administrative appeal from the prison library.

III.   ANALYSIS

For the reasons set forth below, this Court recommends as follows: First, that Petitioner's Motion to Strike be denied. Second, the Petition be denied for failure to exhaust his administrative remedies and that the Petition be dismissed without prejudice. *See United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (stating that a petitioner can file a 28 U.S.C. § 2241 petition after exhausting his administrative remedies with the BOP). In the alternative, this Court recommends that the Petition be denied, and this action be dismissed with prejudice.

a.  **Petitioner's Motion to Strike**

The Federal Rules of Evidence apply to habeas proceedings. Fed. R. Evid. 1101; *see also Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008). Petitioner moves to strike paragraphs three, four, and six of Kinyon's declaration, arguing that they contain hearsay. This Court recommends that Petitioner's motion be denied. First, an affidavit by a prison official is a standard response to a petition for writ of habeas corpus. *See Willis v. Ciccone*, 506 F.2d 1011, 1017 (8th Cir. 1974) (stating that an evidentiary hearing in a habeas case is only necessary in "extreme cases" and "[a] response by prison authorities through affidavit detailing of the

5

procedures followed . . . obviate[] the necessity for a hearing"); *see also* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . ."). Second, the paragraphs that Petitioner moves to strike merely restate the contents of the attachments to the declaration and Kinyon avers in the first paragraph of her declaration that the attachments are true and correct copies of BOP documents that are kept in the regular course of business. Thus, the attached documents are exceptions to the hearsay exclusionary rule. Fed. R. Evid. 803(6). As a result, striking the paragraphs in no way changes the record before this Court because this Court can rely upon those underlying documents for the truth of the matter asserted.

### b.   Standard of Review on the Petition for Writ of Habeas Corpus

When a petition for a writ of habeas corpus is brought, "[t]he only issue which should concern a federal court . . . is whether the prisoner has been aggrieved by a denial of a fundamental constitutional right." *Willis*, 506 F.2d at 1016. The Eighth Circuit Court of Appeals has held that

> [i]n the context of challenges to . . . the actions of prison authorities, . . . habeas corpus is limited to claims involving the deprivation of substantial rights, and . . . even where such claims are present, it is available, except in the most unusual circumstances, only after administrative procedures which provide a real possibility for relief have been exhausted.

*Id.* at 1015.

### c.   Overview of Bureau of Prison's Administrative Procedures

Stealing and being in an unauthorized area are prohibited acts under the Bureau of Prison's policies.  28 C.F.R. § 541.13, tbl.3, Codes 219, 316 (2009).  When BOP staff "witnesses or has a reasonable belief that a violation of [BOP] regulations has been committed by an inmate . . . staff shall prepare an Incident Report."  *Id.* at § 541.14(a).  BOP staff must conduct a

"prompt" investigation and "[t]he inmate may receive a copy of the Incident Report prior to being seen by the investigating agency."[3] *Id.* at § 541.14(b).  BOP investigating staff must read the inmate the charges against him, inform the inmate of his right to remain silent, and provide the inmate with the opportunity to provide a statement concerning the incident.  *Id.*

An initial hearing before a Unit Discipline Committee (UDC) may be conducted following the investigation.  28 C.F.R. § 541.15.  The BOP requires that,

> [i]n order to ensure impartiality, the appropriate staff member(s) . . . may not be the reporting or investigating officer or a witness to the incident, or play any significant part in having the charges referred to the UDC. . . . If the UDC finds at the initial hearing that an inmate has committed a prohibited act, the UDC may impose minor dispositions and sanctions. When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer [(DHO)] for further hearing.

*Id.*

The BOP mandates other minimum standards for initial hearings, including "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident," 28 C.F.R. § 541.15(a); the hearing shall be held within three working days of when the staff becomes aware of the incident, *id.* at § 541.15(b); "the inmate is entitled to be present at the initial hearing," *id.* at § 541.15(c); "[t]he inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf," *id*. at § 541.15(d); and "[t]he UDC shall give the inmate a written copy of the decision and disposition by the close of business the next work day," *id.* at § 541.15(f). "When charges are to be referred to the [DHO], the UDC shall advise the inmate of the rights afforded at a hearing before the DHO."  28 C.F.R. § 541.15(i).

---

[3] "The staff member shall note the date and time the inmate received a copy of the Incident Report." 28 C.F.R. § 541.14(b)(2).

No less than 24 hours before the discipline hearing before the DHO, the inmate shall receive advanced notice of the charges. 28 C.F.R. § 541.17(a).  The inmate may have a staff member appointed to represent him at the discipline hearing.  *Id.* at § 541.17(b).

> The Warden, the DHO or alternate DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative. The Warden may exclude staff from acting as staff representative in a particular case when there is a potential conflict in roles.

*Id.*  "[T]he DHO [must] give a copy of the investigation and other relevant materials to the inmate's staff representative."  *Id.* at § 541.14(b).

At the hearing before the DHO, the inmate may make a statement and present documentary evidence.  28 C.F.R. § 541.17(c).  "The DHO shall consider all evidence presented at the hearing."  *Id.* at § 541.17(f).  The DHO shall prepare a record of the proceedings.  *Id.* at § 541.17(g).  "The DHO shall give the inmate a written copy of the decisions and disposition, *ordinarily* within 10 days of the DHO's decision."  *Id.* (emphasis added.)  "At the time the [UDC] or [DHO] gives an inmate written notice of its decision, the UDC or DHO shall also advise the inmate that the inmate may appeal the decision under Administrative Remedy Procedures."  *Id.* at § 541.19.

An inmate has "20 calendar days following the date on which the basis for the Request occurred" to submit "a formal written Administrative Remedy Request."  28 C.F.R. § 542.14(a).

> Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by

> staff, that a response to the inmate's request for copies of
> dispositions requested under § 542.19 of this part was delayed.

*Id.* at § 542.14(b).

### d. Petitioner has failed to exhaust his administrative remedies

A federal prisoner must exhaust his administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241. *Chappel*, 208 F.3d at 1069. For the reasons set forth below, this Court concludes that Petitioner has failed to exhaust his administrative remedies.

Petitioner contends that he exhausted his administrative remedies because his "Unit Team" refused to provide administrative remedy forms to appeal the decision of the DHO and "the Regional Director" refused to accept his appeal from the DHO hearing. Petitioner's contentions are unsupported by the record evidence attached to his own Petition. On at least two occasions, Petitioner pursued the administrative appellate remedies available to him, but his requests for review were denied because he failed to attach the DHO's decision, which was not yet in his possession.  The second denial specifically directed Petitioner to resubmit his administrative appeal once he received his copy of the DHO decision.

The BOP's regulations state that "[t]he DHO shall give the inmate a written copy of the decisions and disposition, *ordinarily* within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g). In other words, the DHO is not absolutely required to provide the inmate with a written copy of his decision and disposition within 10 days. The Administrative Remedy Coordinator's April 21, 2010 disposition notice recognizes that Petitioner presented a "valid reason for delay" in bringing his appeal, 28 C.F.R. § 542.14(b), and granted Petitioner an extension of time to file his administrative appeal. The record supports that, rather than wait for his DHO report, Petitioner filed this federal habeas Petition.

The Government states that "[a]lthough Petitioner has not exhausted his administrative remedies, the Respondent acknowledges there may be cause for the Court to excuse him from doing so, because of the delay before he received a copy of the DHO Report." (Resp. Mem. at 10, June 21, 2010.)   While it may be argued that this sentence constitutes a waiver of the exhaustion requirement, this Court disagrees with that interpretation. Respondent's statement acknowledges that Respondent should have provided Petitioner with the DHO decision more promptly. But, this acknowledgment is not an express waiver, *Elwood v. Jeter*, 386 F.3d 842, 844 (8th Cir. 2004), and provides neither sufficient cause nor "special circumstances," *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993), to waive by implication what the Eighth Circuit Court of Appeals has repeatedly stated is a condition precedent to bringing a section 2241 petition. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006); *Chappel*, 208 F.3d at 1069; *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993); *Leighnor v. Turner*, 884 F.2d 385, 387 (8th Cir.1989); *Willis*, 506 F.2d at 1015; *see also Love v. Tippy*, 133 F.3d 1066, 1068 (8th Cir. 1998) (noting that a section 2241 petition was filed after petitioner exhausted administrative remedies); *Martin v. Gerlinski*, 133 F.3d 1076, 1078 (8th Cir. 1998) (noting that section 2241 petitions were filed after petitioners exhausted administrative remedies); *Sesler v. Pitzer*, 110 F.3d 569, 570 (8th Cir. 1997) (noting that section 2241 petition was filed after petitioner exhausted "all possible administrative remedies"), *overruled on unrelated grounds by Hohn v. United States*, 262 F.3d 811 (8th Cir. 2001).

This Court can find no special circumstances to waive the exhaustion requirement in the present action. The possibility of a delay in delivering the DHO report was anticipated by the administrative procedures and an inmate is not excused from first exhausting his administrative remedies where the inmate's right to pursue an administrative appeal remains available and pursuing the administrative appeal in no way delays an imminent release date. *Contra Bania v.*

*Federal Bureau of Prisons*, Civil No. 10–2212 (SRN/FLN), 2011 WL 882096, at *2 n.2 (D. Minn. Feb. 24, 2011) (waiving exhaustion requirement where "time is of the essence due to the circumstances giving rise to" the petition). As noted above, Petitioner is not projected for release until approximately April 2019. Therefore, Petitioner has failed to exhaust his administrative remedies.

### e.   Petitioner's due process rights were vindicated

If the Court reaches the merits of the Petition, this Court respectfully recommends that the Petition be denied because Petitioner's due process rights were vindicated. Depriving a prisoner of "good time credits as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (*Wolff v. McDonnell*, 418 U.S. 539, 555-58, 94 S. Ct. 2963, __ (1974)). To ensure that a prisoner's due process rights are vindicated,

> when a prison disciplinary hearing may result in the loss of good time credits—
>
> "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . . [In addition,] the findings of the prison disciplinary board [must be] supported by some evidence in the record."

*Espinoza*, 283 F.3d at 951-52 (quoting *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768 (1985)).

"An inmate is entitled to expect the Bureau of Prisons to follow its own policies." *Anderson v. Smith*, 697 F.2d 239, 240 (8th Cir. 1983) (citing *Wolff*, 418 U.S. at 557, 94 S. Ct. t 2975). But, "there is no federal constitutional liberty interest in having . . . prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) Thus, "[i]n the absence

of constitutional violations, [federal courts] defer to the judgment of . . . prison administrators."
*Campbell v. Cauthron*, 623 F.2d 503, 505 (8th Cir. 1980).

Petitioner makes the following claims that he was deprived of procedural due process: Respondent did not serve him with the Incident Report within 24 hours of the incident; Respondent did not hold a UDC hearing 72 hours following the issuance of the Incident Report; Respondent destroyed the evidence against Petitioner; Respondent failed to advise Petitioner of his rights with regard to the DHO hearing; Petitioner was restrained during the DHO hearing and was, therefore, unable to take notes of the hearing; the DHO hearing was not recorded; Respondent denied Petitioner's request for witnesses or a "staff representative"; Respondent failed to advise Petitioner of his appellate rights; Petitioner was not provided with a copy of the DHO report within 10 days of the hearing;  and the Warden refused to audit the Committee or DHO hearings.

Regardless of whether any of the acts violated prison regulations, the record produced by Petitioner and Respondent traverses Petitioner's claims that he was deprived of his constitutional right to due process. The Incident Report includes a picture of "the eggs" in what appear to be ball containers. (*Id.*) Petitioner received advanced written notice of the charges against him when he was provided with the Incident Report on February 13, 2010, and February 17, 2010. (Decl. Kinyon, at Ex. 2.)  Petitioner received advanced written notice of the DHO hearing and of his rights in connection with the hearing on February 24, 2010. (*Id.*) Petitioner stated that he did not want a staff representative and he did not want to call any witnesses at the DHO hearing. (*Id.*) Petitioner had a hearing before the UDC on February 24, 2010, and a hearing before the DHO on March 11, 2010. (*Id.*)  Petitioner stated at the DHO hearing that he understood his rights; Petitioner did not submit any documentary evidence; and Petitioner confirmed that he did not

want to call any witnesses or have a staff representation. (*Id.*)  Petitioner was provided with a written copy of the DHO's report on May 26, 2010. (*Id.*)

The Eighth Circuit Court of Appeals has considered a prisoner's right to an interpreter in prison disciplinary hearings and held that a prisoner's due process rights are vindicated where he is provided with the assistance of an interpreter every time he requests an interpreter. *Gonzales-Perez v. Harper*, 241 F.3d 633, 637 (8th Cir. 2001). Petitioner makes the following claims concerning his right to an interpreter: Respondent did not have a Spanish interpreter for Petitioner when the Incident Report was served on him on February 13, 2010; Villarreal was a biased interpreter because he interpreted the Incident Report on February 17, 2010, served on the UDC and translated during the UDC hearing; and Respondent denied Petitioner an unbiased translator for the DHO hearing.

The record produced by Petitioner and Respondent traverses Petitioner's claims. On February 13, 2010, Lieutenant J. Frie interpreted the incident report for Petitioner. (Decl. Kinyon, at Ex. 2.) The UDC hearing adjourned on February 17, 2010, because Petitioner requested an interpreter and thereafter, Unit Manager B. Villareal interpreted the incident report for Petitioner. (*Id.*) The records from the UDC hearing on February 24, 2010, state that the hearing was conducted in Spanish. (*Id.*) B. Villareal translated the UDC decision to Petitioner and Petitioner was provided with Notice of Advisement, Notice of Discipline Hearng before the (DHO), and Inmate Rights at Discipline Hearing forms, which Petitioner signed. (*Id.*) Petitioner requested a translator at the DHO hearing. (*Id.*) On March 11, 2010, the hearing before the DHO was translated by Physician's Assistant J. Edmond. (*Id.*) Therefore, the records indicate that Petitioner's rights were vindicated whenever he requested an interpreter.

Contrary to Petitioner's contentions, the fact that B. Villareal translated and served on the UDC does not make B. Villareal a biased interpreter.  This Court does not read the Eighth

Circuit Court of Appeals' holding in *Gonzales-Perez* to mandate that a prisoner have a separate and certified interpreter, comparable to criminal proceedings. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975.   In the present case, Petitioner's rights were vindicated by having Spanish speakers take part and interpret the proceedings.

### f.   "Some evidence" supports the DHO's decision

If the Court reaches the merits of the Petition, this Court respectfully recommends that the Petition be denied because some evidence supports the DHO's decision. "[R]evocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 2773 (1985) (quoting *Wolff*, 418 U.S. at 558, 94 S. Ct. at 2976.)

> This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56, 105 S. Ct. at 2774 (quotation omitted).

Petitioner contends that the UDC's recommendation was not based on the greater weight of the evidence and the DHO's report was arbitrary and capricious. But, at a minimum, there is some evidence to support the DHO's conclusion. This evidence includes the fact that Petitioner told Lt. W. Earl that "I'm guilty, I stole the eggs for [V]alentine[']s day. I was going to cook eggs for everyone for burritos." (Aff. Kinyon, at Ex 2.)  Petitioner made a comparable statement to the UDC and the DHO. (*Id.*)  Furthermore, K.F. McAllister, Food Service Foreman, witnessed

Petitioner coming out of the back cooler and confiscated from Petitioner's shirt two racquetball containers filled with cracked eggs. (*Id.*)

## IV.  CERTIFICATE OF APPEALABILITY

Rule 11 Governing Section 2254 Cases in the United States District Court requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Here, Petitioner has made no such showing.  Therefore, this Court recommends that the certificate of appealability be denied.

## V.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's motion to strike be **DENIED**;

2. Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (Docket No. 1) be **DENIED**;

3. This action be **DISMISSED WITHOUT PREJUDICE** for Petitioner to exhaust his administrative remedies; and

4. The certificate of appealability be **DENIED**.


Dated:    Sept. 12, 2011

                                                      *s/ Tony N. Leung*
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              United States District Court
                                              For the District of Minnesota

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before        September 28, 2011     .